UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SONNY G.,[1] | |
|       Plaintiff, | Case No. 1:23-CV-00498-DKG |
| v. | **MEMORANDUM DECISION AND ORDER** |
| MARTIN O'MALLEY[2], Commissioner of Social Security Administration, | |
|       Defendant. | |

**INTRODUCTION**

Plaintiff filed a Complaint for judicial review of the Commissioner's denial of his applications for social security benefits. (Dkt. 1). The Court has reviewed the Complaint, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will affirm the Commissioner's decision.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Martin O'Malley became the Commissioner of Social Security Administration on December 20, 2023, and is substituted for Kilolo Kijakazi as the Defendant in this matter pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

On April 10, 2018, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. Both applications allege disability beginning on March 2, 2018. The applications were denied initially and on reconsideration.

A hearing was conducted on March 10, 2020, before Administrative Law Judge (ALJ) Wynne O'Brien-Persons who issued an unfavorable decision on April 29, 2020. (AR 13-25). After the Appeals Council denied Plaintiff's request for review, Plaintiff sought judicial review of ALJ O'Brien-Persons' decision. On March 31, 2022, the Court remanded ALJ O'Brien-Persons' decision for further proceedings. (AR 797-829).

On remand, ALJ Stephen Marchioro held a hearing on May 11, 2023 where testimony was given by Plaintiff and a vocational expert. ALJ Marchioro issued a decision on August 1, 2023, finding Plaintiff not disabled. The Appeals Council denied review, making the ALJ's decision final. On November 10, 2023, Plaintiff timely filed his Complaint in this action seeking judicial review of ALJ Marchioro's decision. (Dkt. 1). The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

At the time of the alleged onset date, Plaintiff was twenty-five years of age. Plaintiff is a high school graduate with previous work experience in agriculture, trailer assembling, and RV production. (AR 205). Plaintiff claims he is unable to work due to physical impairments, including: microscopic polyangiitis ANCA vasculitis, chronic kidney failure, and hypertension. (AR 204).

**MEMORANDUM DECISION AND ORDER - 2**

## THE ALJ'S DECISION

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Lounsbarry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

Here, at step one, the ALJ reserved any finding as to whether Plaintiff had engaged in substantial gainful activity since March 2, 2018, the alleged onset date. (AR 703). At step two, the ALJ found Plaintiff had the following medically determinable, severe impairments: chronic kidney disease, Stage 4; microscopic polyangiitis; and anemia in Stage 4 chronic kidney disease. (AR 703). The ALJ found also at step two, that Plaintiff's complaints of hypertension, gastroesophageal reflux disease, vitamin D deficiency, and depression and anxiety were nonsevere. (AR 703-707). The ALJ further found Plaintiff's alleged symptoms of head, back, and chest pain were not medically determinable impairments. (AR 707-709).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meet or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (AR 709-710).

**MEMORANDUM DECISION AND ORDER - 3**

The ALJ next found Plaintiff retained the residual functional capacity (RFC) to perform a reduced range of sedentary work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations:

> he can lift/carry/push/pull 10 pounds occasionally, and less than 10 pounds frequently. He can stand and/or walk for six hours in an 8-hour workday, and can sit for about six hours in an 8-hour workday. He is limited to occasional bilateral pushing/pulling. He can frequently reach overhead, handle, and feel with the bilateral upper extremities. The claimant can occasionally climb ramps or stairs, and ladders, ropes, or scaffolds. He can frequently balance as that term is defined in the Selected Characteristics of Occupations. He can frequently stoop, kneel, crouch, and crawl. He can occasionally be exposed to vibrations as that term is defined in the Selected Characteristics of Occupations. He can occasionally be exposed to unprotected heights.

(AR 710). Relying upon testimony from the vocational expert, the ALJ concluded at step four that Plaintiff would be unable to perform his past relevant work. (AR 719). At step five, the ALJ found jobs exist in significant numbers in the national economy that Plaintiff can perform given his age, education, work experience, and RFC. Thus, the ALJ determined Plaintiff was not disabled. (AR 719-721).

## ISSUES FOR REVIEW

1.   Whether the ALJ properly evaluated Plaintiff's subjective symptom statements?

2.   Whether the ALJ properly evaluated the medical opinion evidence?

3.   Whether the ALJ properly evaluated the lay witness statements?

## STANDARD OF REVIEW

The Court must uphold an ALJ's decision, unless: 1) the decision is based on legal error, or 2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires more than a mere scintilla, but less than a preponderance of evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

In making its determination, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that does not support the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Garrison*, 759 F.3d at 1010; *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009). If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court must uphold the ALJ's finding. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

**MEMORANDUM DECISION AND ORDER - 5**

## DISCUSSION

### 1. Plaintiff's Symptom Statements

Plaintiff argues the ALJ failed to provide clear and convincing reasons to disregard his subjective symptom statements. (Dkt. 15, 23). Defendant maintains the ALJ reasonably evaluated Plaintiff's subjective symptom complaints. (Dkt. 22).

### A. Legal Standard

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); SSR 16-3p. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Garrison*, 759 F.3d at 1014-15; 20 C.F.R. § 404.1529 (Mar. 27, 2017)).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ next evaluates the intensity and persistence of the symptoms to determine the extent that the symptoms limit a claimant's ability to perform work related activities. SSR 16-3p. When evaluating the intensity and persistence of symptoms, the ALJ must consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p. The ALJ may discredit the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so. *Trevizo*, 871 F.3d at 678; *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The clear and convincing standard does not require the Court to be convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

### B. Plaintiff's Statements and Testimony

Plaintiff completed an adult function report on April 24, 2018. (AR 212-220). In the report, Plaintiff states his "lifestyle has changed dramatically due to my illnesses and medication. I'm very limited [in] my daily activities and social life. I'm trying to adapt to my new lifestyle even tho[ugh] I have a hard time believing what I'm going through now." (AR 220).

Plaintiff describes his daily activities as: "wake up at 8 am get child ready to get picked up from grandma, Mondays and Wednesdays clinic/lab work appointments, other days at home watching TV, stay up cannot fall asleep till after 1 am." (AR 213). Plaintiff reports he is able to dress, shower, and attend to personal care needs without assistance, but must sit down to do so. Plaintiff relies on others to drive, cook, and shop for him. He no longer engages in certain activities due to weakness and lack of motivation, including: grilling outside, standing, completing household work, playing basketball, and drawing. Plaintiff reports he can walk one block before needing to rest for an hour.

**MEMORANDUM DECISION AND ORDER - 7**

At the hearing conducted on March 10, 2020, Plaintiff testified he is prevented from working by fatigue, an inability to stand for more than forty-five minutes, and swelling in his hands. (AR 38). Plaintiff stated that, during the day he performs household chores such as laundry, vacuum, and house cleaning, but he needs to take breaks either by sitting down for a while or napping. Family members assist with yardwork, cooking, and other tasks. Plaintiff attends his daughter's school functions and activities, but testified that he does not grocery shop because he gets tired walking around and does not drive due to anxiety. (AR 40, 45). Plaintiff stated he would like to return to full time work but is unsure if he could "hack it" due to anxiety, and having to stand and sit for too long. (AR 43-44).

At the second hearing conducted on May 11, 2023, Plaintiff testified that his major issue is the residual fatigue from his kidney disease. (AR 743). He stated that he takes naps daily and had recently been seeing a counselor two times a week for anxiety. Plaintiff testified that he does some housework, but that it takes a long time because he needs to take thirty-minute breaks. (AR 751). He stated that he does not shop or do outside chores, and that he has good days and bad days. (AR 752-53). Plaintiff testified that he is able to walk a block or two before needing to rest. (AR 755).

### C.     Analysis of the ALJ's Decision

In the written decision, the ALJ considered Plaintiff's subjective symptom statements and concluded that, although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning

MEMORANDUM DECISION AND ORDER - 8

the intensity, persistence, and limiting effects of the symptoms were not entirely

consistent with the medical evidence and other evidence in the record. (AR 712). After

discussing medical records relevant to his kidney-related impairments, the ALJ further

stated: "claimant's statements about the intensity, persistence, and limiting effects of his

symptoms . . . are inconsistent with the claimant's activities of daily living." (AR 714).

Thus, the ALJ gave two reasons for rejecting Plaintiff's symptom testimony: 1)

inconsistency with evidence in the record; and 2) inconsistency with activities of daily

living and work activities. The Court will discuss each reason in turn below.

### 1.    Evidence in the Record

Conflicts between a claimant's statements and the medical record and other

evidence is a specific, clear, and convincing basis for discrediting Plaintiff's symptom

statements. *Smartt*, 53 F.4th at 498; *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595,

600 (9th Cir. 1999) ("[C]onflicts between a [claimant's] testimony of subjective

complaints and the objective medical evidence in the record" can be "specific and

substantial reasons that undermine . . . credibility."). While subjective symptom

"testimony cannot be rejected on the sole ground that it is not fully corroborated by

objective medical evidence, the medical evidence is still a relevant factor in determining

the severity of the claimant's [symptoms] and [their] disabling effects." *Rollins v.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676,

681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for

discounting pain testimony, it is a factor that the ALJ can consider"); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Further, the effectiveness of medical treatment is a relevant factor to consider in evaluating Plaintiff's testimony. 20 C.F.R. §§ 404.1529(c)(3)(iv); 416.929(c)(3)(iv) (effectiveness of medical treatment). Improvement with conservative treatment is a convincing reason to discount an allegation of disabling symptoms. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti*, 533 F.3d at 1040.

Here, the ALJ discounted Plaintiff's symptom statements as not entirely consistent with the medical evidence and other evidence in the record. (AR 712). Specifically, the evidence related to his kidney-related impairments - including chronic kidney disease, Stage 4; microscopic polyangiitis; and anemia – which show Plaintiff's microscopic polyangiitis was in partial remission in 2018, was in complete remission by 2019, doing very well with conservative treatment medication management when he did not miss doses, and his follow up exams were mostly unremarkable. (AR 713). The ALJ further noted the record failed to establish persistent complaints of debilitating fatigue over any continuous twelve month period, and that Plaintiff did not require dialysis or a kidney transplant. (AR 714). The ALJ concluded that the RFC limitations of less strenuous, sedentary exertional activities with some additional postural, manipulative, and environmental limitations appropriately accounted for Plaintiff's impairments.

**MEMORANDUM DECISION AND ORDER - 10**

The Court finds the ALJ identified records and evidence that conflicted with Plaintiff's statements.[3] The records discussed by the ALJ show that Plaintiff's condition and other impairments had significantly improved with treatment, even though he occasionally experienced flare ups and some fatigue. (AR 712-714). The ALJ further observed that the record fails to establish persistent complaints of debilitating fatigue. (AR 714). These records are incongruent with Plaintiff's complaints of disabling fatigue and functional abilities and, thus, establish a specific, clear, and convincing reason for discounting Plaintiff's symptom statements.

## 2.      Daily and Work Activities

The ALJ's second reason for discrediting Plaintiff's symptom testimony is inconsistency with Plaintiff's activities of daily living and work activities. (AR 714-715). Daily living activities may provide a basis for discounting subjective symptoms if the claimant's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina*, 674 F.3d at 1112-13; *Orn*, 495 F.3d at 639. Further, "[a]n ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020).

---

[3] Plaintiff contends that his condition had worsened in the years between the two ALJ decisions and pointed to records dated just prior to and following the second hearing held on May 11, 2023, that suggest a possible flare up of his condition. (Dkt. 15 at 7-8). However, Plaintiff concedes that the evidence is not substantially different from the record before the prior ALJ, and does not clearly contest the current ALJ's reasoning or conclusion that the objective medical evidence identified and discussed in the decision conflicted with Plaintiff's symptom statements. (Dkt. 15, 23) (briefing challenging the ALJ's conclusion that daily activities were inconsistent with his symptom statements). Thus, Plaintiff has waived any challenge in this regard. *McKay v. Ingleson*, 558 F.3d 888, 891 n. 5 (9th Cir. 2009) ("Because this argument was not raised clearly and distinctly in the opening brief, it has been waived"); *Carmickle*, 533 F.3d at 1161 n. 2.

Having carefully reviewed the record, the Court finds the ALJ's decision rejecting Plaintiff's testimony as inconsistent with his daily and work activities is supported by substantial evidence.

The ALJ accurately summarized the functional report and Plaintiff's testimony.[4] The ALJ also identified medical records that he found provided some insight into Plaintiff's level of functioning. (AR 714). For instance, records reporting Plaintiff enjoys drawing, playing video games, makes breakfast, visits his grandmother, does some household chores, and watches television. The ALJ observed progress notes from mental counseling visits dated December 7, 2021 and January 4, 2022, reporting that Plaintiff had a side business breeding dogs that provides financial support to his family. (AR 714-715) (citing AR 2105, 2115). Other records identified by the ALJ show Plaintiff was able to attend a comedy show, reported working on an engine, and was "actively working" as recently as March 2023. (AR 715). The ALJ found that Plaintiff's testimony describing his activities inconsistent with his complaints of debilitating symptoms. The ALJ further found Plaintiff's assertion that he has not done any work for pay or profit in the last five years inconsistent with records referring to work activity after the alleged onset date. In sum, the ALJ concluded that Plaintiff's daily and work activities suggest that he is not functionally impaired to the extent alleged, and that the overall evidence does not support limitations beyond those set forth in the RFC. (AR 715).

---

[4] The written decision refers to a hearing held on March 27, 2019. (AR 711). However, the first ALJ conducted a hearing on March 10, 2020. (AR 30). In any event, the ALJ accurately summarized the substance of Plaintiff's testimony during both ALJ hearings. (AR 35– 46, 711-712, 715, 736-755).

**MEMORANDUM DECISION AND ORDER - 12**

On review, Plaintiff contests the ALJ's rationale concerning records reporting that he had a dog breeding business, was working on an engine, and was "actively working, no insurance." (Dkt. 15, 23). Plaintiff argues the ALJ failed to explain how these activities conflicted with his symptom statements, specifically his fatigue. Defendant maintains the ALJ's decision is reasonable and supported by the record. (Dkt. 22). The Court finds that the records discussed by the ALJ in the decision support the ALJ's reasoning and conclusion that Plaintiff's activities were inconsistent with his complaints of debilitating symptoms.

During the hearing, the ALJ inquired of Plaintiff regarding an emergency room treatment record reporting that Plaintiff was working on a car engine when he was stung by a bee. (AR 737-738). Plaintiff clarified that he was not working on the engine but, instead, was "sitting on the side" watching a mechanic work on the engine. (AR 737-738). The ALJ found the contemporaneous medical records do not reflect or support Plaintiff's assertion. (AR 715) (citing AR 1724). The ALJ points to a provider report dated August 23, 2022, from the emergency room visit for a bee sting on Plaintiff's hand where Plaintiff reported "he was working on an engine" and there was a beehive in the engine. (AR 1724). Further, the ALJ identified repetitive records from 2023 referring to Plaintiff as "actively working, no insurance." (AR 715) (citing AR 1611, 1629, 1800, 1943, 1981). The ALJ reasonably relied on these records to conclude that Plaintiff's statements were inconsistent with the record. *Morgan.*, 169 F.3d at 599-600 (The ALJ resolves differing interpretations of the record.); *Burch*, 400 F.3d at 679

**MEMORANDUM DECISION AND ORDER - 13**

(affirming the ALJ where the evidence is subject to more than one rational

interpretation and the ALJ's decision is supported by substantial evidence.).

Plaintiff disagrees with the ALJ's conclusion and interpretation of the record,

arguing the ALJ failed to explain how dog breeding or a one-time activity of working on

an engine with a friend conflicted with his complaints of fatigue. (Dkt. 23 at 2-3).

Further, Plaintiff argues the "actively working, no insurance" reference was merely

carryover in the medical records from when he was working, pointing out that the same

records stating he was "actively working, no insurance," also indicated he was covered

by Medicaid. (Dkt. 23 at 3). Defendant maintains the ALJ's interpretation of the record

and conclusion are reasonable, and that Plaintiff's alternative interpretation is not a basis

for remand. (Dkt. 22 at 4-5).

Having carefully reviewed the ALJ's decision and the entire record, the Court

finds the ALJ's conclusion that Plaintiff's daily and work activities are inconsistent with

his alleged limitations is rational and supported by substantial evidence. *Ford*, 950 F.3d

at 1156. The ALJ identified specific records reporting that Plaintiff was actively working,

had a dog breeding business, and was at least "helping" a friend work on a car engine.

(AR 714-715, Dkt. 23 at 2). The records identified by the ALJ demonstrate that Plaintiff

was engaged in various activities that, on whole, reflected that his functional abilities

were greater than he asserted in his statements and testimony. While there may be

another plausible interpretation of the record, the ALJ's conclusion is reasonable and

**MEMORANDUM DECISION AND ORDER - 14**

supported by the records identified and discussed in the decision and, therefore, must be upheld. *Burch*, 400 F.3d at 679.

Viewing the decision in its entirety, the Court also finds the ALJ properly explained his reasoning for discrediting Plaintiff's symptom statements based on his daily and work activities. Plaintiff's primary complaint is that fatigue limits his functional ability. The ALJ thoroughly discussed Plaintiff's testimony during both hearings and provided an accurate summary of his reported daily activities which included: attending to his personal care and daily needs, spending time with family, attending events, completing some household chores but it takes time, engaging in work-type activities of owning his own dog breeding business, and helping work on an engine. The ALJ concluded that these activities demonstrate Plaintiff is not as functionally impaired to the extent alleged and that he is capable of performing the reduced range of sedentary work as stated in the RFC. The ALJ's conclusion is reasonable given Plaintiff was engaged in work activities after the onset date and was able to perform daily activities demonstrative of his ability to function at a greater level than asserted, despite his fatigue. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010) (Daily activities can be a basis for discrediting a claimant's testimony to the extent that they contradict claims of a totally debilitating impairment, even when those activities suggest some difficulty functioning.); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1991) (concluding that claimant's testimony about her daily activities, including taking care of personal needs,

**MEMORANDUM DECISION AND ORDER - 15**

preparing easy meals, doing light housework and shopping for groceries, may be seen as inconsistent with the presence of a disabling condition).

The ALJ's reasoning for rejecting Plaintiff's complaints of debilitating fatigue is evident when considering the decision as a whole – in particular, the ALJ's discussion of the objective medical records. (AR 714). The activities identified by the ALJ coupled with his finding that the record fails to establish persistent complaints of debilitating fatigue, support the ALJ's reasoning for discrediting Plaintiff's symptom statements which, again, are based on fatigue as the limiting factor. No further explanation is needed to discern the ALJ's rationale. The Court finds that the ALJ properly discussed his reasons for concluding that Plaintiff's symptom statements are inconsistent with his daily and work activities. (AR 715).[5]

For these reasons, the Court finds the ALJ's conclusions concerning Plaintiff's symptom statements and activities, are easily discernable, well-explained, and supported by substantial evidence when viewing the decision in its entirety. The ALJ has identified clear and convincing reasons for rejecting Plaintiff's symptom statements. Accordingly, the ALJ's decision will be affirmed on this issue.

---

[5] Plaintiff argues the ALJ's decision suffers from the same shortcomings as the first ALJ decision. (Dkt. 15, 23). In contrast to the prior ALJ's decision, however, ALJ Marchioro's decision describes and discusses the daily and work activities found to be inconsistent with Plaintiff's symptom statements. (AR 714-717). Notably, the ALJ discussed more recent records dated after the prior ALJ decision that reflect Plaintiff was engaged in working activities suggestive of a greater level of functioning than alleged. While Plaintiff disagrees and argues more explanation is required, the Court finds ALJ Marchioro's decision, when viewed in its entirety, provides a proper discussion of the ALJ's conclusion that Plaintiff's daily and work activities were inconsistent with his statements of debilitating symptom due to fatigue.

**MEMORANDUM DECISION AND ORDER - 16**

2.      **Medical Opinion Evidence**

Plaintiff argues the ALJ erred in evaluating the medical opinions authored by

Christopher Keller, M.D. (Dkt. 15, 23). Plaintiff contends the ALJ failed to provide

specific and legitimate reasons for discounting the medical opinions. Defendant

maintains the ALJ rationally assessed the persuasiveness of the medical opinions as

required under the applicable regulations. (Dkt. 22).

A.      **Legal Standard**

Under the regulations governing an ALJ's evaluation of medical opinion evidence

for claims filed on or after March 27, 2017, such as here, the ALJ evaluates the

persuasiveness of the opinions based on several factors. 20 C.F.R. §§ 404.1520c(a),

416.920c(a). These are: supportability, consistency, relationship to the claimant,

specialization, and other factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

The most important factors in the evaluation process are supportability and consistency.

20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical

opinion by explaining the 'relevant ... objective medical evidence.'" *Woods v. Kijakazi*,

32 F.4th 785, 791-792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)).

"Consistency means the extent to which a medical opinion is 'consistent ... with the

evidence from other medical sources and nonmedical sources in the claim.'" *Id*. (quoting

20 C.F.R. § 404.1520c(c)(2)). The ALJ is required to articulate how persuasive they find

the evidence and explain how the supportability and consistency factors were considered. *Id.*; 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The ALJ may, but is not required to, explain how the other persuasive factors in paragraphs (c)(3) through (c)(5) were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other persuasive factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). The ALJ's persuasiveness determination must be supported by substantial evidence. *Woods*, 32 F.4th at 787.

### B.    Keller's Opinions

Keller, a nephrologist[6], has treated Plaintiff since March 4, 2018, and authored three opinions on Plaintiff's functional abilities that are contained in the record.

The first opinion, dated March 2, 2020, is a medical assessment of Plaintiff's physical ability to perform work-related activities. (AR 687-690). There, Keller opined Plaintiff could regularly work six hours in a day, and would be absent two days per month. (AR 687). Keller concluded Plaintiff can stand/walk a total of six hours in a regular eight-hour workday, can stand/walk without interruption for one hour, and has no sitting limitations. Further, Keller opined that Plaintiff can occasionally carry twenty pounds and frequently carry ten pounds; is able to frequently perform all postural

---

[6] A nephrologist is a medical doctor who specializes in treating kidney conditions.

activities except for climbing; and can perform all other physical functions frequently except for pushing/pulling. Keller assessed one environmental restriction to moving machinery due to fatigue. Keller concluded that Plaintiff's "kidney disease with associated fatigue [is] the main limiting factor" to his ability to perform work activities. (AR 687-690).

In his second opinion, a physical assessment dated March 22, 2023, Keller found Plaintiff could work six hours in a day, and would be absent from work four days each month. (AR 2064). He opined that Plaintiff could stand/walk a total of four hours in a workday, for up to one hour without interruption. (AR 2064). Keller again found no limitation with sitting, but limited Plaintiff to lifting/carrying thirty pounds occasionally and ten pounds frequently, and assigned some postural, physical, and environmental limitations. (AR 2065). All of the limitations opined were based on Plaintiff's stage four chronic kidney disease and resulting fatigue. (AR 2064-2067).

In the final opinion, a letter dated June 20, 2023, Keller stated that although Plaintiff's microscopic polyangiitis is in remission, his advanced chronic kidney disease is not recovered and causes chronic fatigue and difficulty concentrating. (AR 2260). Keller opined that the fatigue limits Plaintiff's ability to work. Keller stated that Plaintiff could sit for eight hours during a workday, but would need more frequent breaks given his fatigue and that his concentration issues would make maintaining a desk job difficult.

**MEMORANDUM DECISION AND ORDER - 19**

C.      **ALJ's Decision**

The ALJ found all of Keller's opinions partially persuasive, concluding they were internally inconsistent, inconsistent with Plaintiff's activities, and not consistent with Keller's own reports. (AR 716-717). As to the second and third opinions, the ALJ found them to be vague and speculative, and based in large part on Plaintiff's subjective complaints. (AR 717). The ALJ further concluded that the portion of Keller's June 20, 2023 letter opinion as to Plaintiff's ability to maintain a desk job was an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1520b(c)(3) and 416.920b(c)(3). For the reasons that follow, the Court will uphold the ALJ's evaluation of Keller's opinions.

The ALJ found Keller's March 2020 opinion limiting Plaintiff to six hours of work per day internally inconsistent with his findings that Plaintiff can stand and walk for up to a total of six hours, and has an unlimited ability to sit. Keller's 2023 opinions similarly found Plaintiff was able to sit without limitation for eight hours at a place of employment. The Court finds the ALJ's conclusion that the opinions were internally inconsistent was rational and supported by substantial evidence. If an individual is able to stand and walk for up to six hours in an eight hour workday, with fatigue as his only limitation, and has no limitations on sitting, it was reasonable for the ALJ to conclude that the individual could work a full workday if the job allowed for appropriate standing and sitting limitations to reduce fatigue. Here, the ALJ assigned an RFC that limited Plaintiff to standing and walking for approximately six hours in an eight-hour workday,

and sitting for about six hours. (AR 710).[7] Thus, the RFC incorporated appropriate standing and sitting limitations consistent with Keller's opinions.

The ALJ also reasonably found that the opinions were inconsistent with Plaintiff's daily activities and work activity. As discussed above, the ALJ did not err in concluding that Plaintiff's daily and work activities were inconsistent with his symptom statements. Throughout the decision, the ALJ consistently identified certain daily and work activities that he found to be inconsistent with Plaintiff's symptom statements. (AR 714-717). For the same reasons, the ALJ found Keller's opinions inconsistent with Plaintiff's daily and work activities. (AR 716-717). The Court finds the ALJ's evaluation of Dr. Keller's opinions to be partially persuasive is supported by substantial evidence as Plaintiff's activities demonstrate that his functional abilities are greater than alleged and opined, despite his fatigue.

The ALJ also found the opinions to be inconsistent with Keller's own reports that Plaintiff's impairment was in remission. (AR 716-717). Plaintiff argues the ALJ erred in his reasoning because while his autoimmune disorder - microscopic polyangiitis - was in complete remission, he continued to suffer from chronic kidney disease and associated

---

[7] On this point, Plaintiff argues ALJ Marchioro's RFC did not provide the same limitation on Plaintiff's ability to sit as the prior ALJ's RFC and, therefore, necessitated a further explanation or limitation in the RFC to constitute a specific and legitimate reason for discrediting Keller's opinion. (Dkt. 15 at 12). That the two ALJ's assigned differing RFC limitations does not dictate whether the ALJ's decision contains error. As discussed herein, the Court finds that ALJ Marchioro's reasoning on this issue is properly explained, easily discernable, and supported by the record.

**MEMORANDUM DECISION AND ORDER - 21**

anemia which caused ongoing fatigue. (Dkt. 15 at 12-13).[8] The Court agrees with Plaintiff on this point.

Keller's records reflect that Plaintiff continued to "struggle with fatigue" due to his chronic kidney disease despite the remission of his microscopic polyangiitis. (AR 946, 1095, 1240). Thus, Keller's opinions that Plaintiff had functional impairments due to his chronic kidney disease and fatigue are not inconsistent with his reported conclusions that Plaintiff's other impairment - microscopic polyangiitis - was in remission. The ALJ's decision in this regard is therefore not supported by the record. However, any error was harmless because the ALJ gave additional legitimate reasons supported by substantial evidence for finding Keller's opinions partially persuasive – internal inconsistency and inconsistency with daily and work activities – as discussed above. *Carmickle*, 533 F.3d at 1162-63; *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (Any error in the ALJ's additional reason was harmless because he identified other specific and legitimate reasons to discount their opinion.). Accordingly, the ALJ's evaluation of Keller's opinions will be affirmed.

**3.    Nonmedical Source Statements**

Plaintiff submitted three statements from nonmedical sources. First, Plaintiff's mother, Ericema, drafted a letter dated March 3, 2020, describing Plaintiff's limitations

---

[8] Earlier in the written decision, the ALJ concluded the overall evidence in the record fails to establish persistent complaints of debilitating fatigue over any continuous 12-month period since the alleged onset date. (AR 714). Plaintiff has not clearly assigned error to that finding by the ALJ or to any failure by the ALJ to account for his fatigue or any other limitations in the RFC assessment, and therefore has waived any such challenges. (Dkt. 15, 23); *McKay*, 558 F.3d at 891 n. 5; *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (same); *Carmickle*, 533 F.3d at 1161 n. 2.

and daily activities as follows:

> [H]e is fatigued often which leads to him having to rest a lot. His daily
> activities are limited. He is not independent like he used to be causing him
> to rely on help from family members. He suffers from severe depression
> and anxiety. Going out to stores and socializing is limited because it can
> trigger his autoimmune disease, plus anxiety. Activities such as sitting and
> standing for long periods of time are difficult.

(AR 261). Second, Plaintiff's grandmother, Norma, submitted a letter dated March 5,

2020, stating: Plaintiff's "daily activities take a toll on his body" and that he gets tired if

he stands or walks too long. (AR 262). Similar to Ericema's statement, Norma's letter

states Plaintiff "is not the same person he was before," and that he relies on her to help

with his daughter and drive him places.

> Third, Plaintiff's girlfriend, Gisela, provided a statement describing Plaintiff as:

> [S]omeone who struggles with normal day to day activities. He suffers from
> extreme fatigue not only from his condition but also from his medications
> and his IV infusion treatments, which he will have to do for the rest of his
> life according to his doctor. I know as much as he tries to resume his
> normal activities his body just gives up on him. I've seen him come home
> with swelling all over his body from simply walking and standing. Since
> his immune system is compromised he has taken extra precautions to
> protect himself at all times. It is very difficult for him to be around a lot of
> people or places that are not sanitized. Even ourselves [sic] as his close
> family members have to take extra precautions around him to not
> jeopardize his health any further. Sonny's life is nowhere near what it used
> to be. His diagnosis has brought a lot of hardships to him.

(AR 263).

> The ALJ concluded that the lay witness statements were of limited persuasive

value because they were not supported by the objective medical findings and response to

treatment at the time the statements were prepared, which revealed that Plaintiff's signs

**MEMORANDUM DECISION AND ORDER - 23**

and symptoms of his kidney-related impairments were in a near complete partial remission, or in complete remission. (AR 718-19). Further, the ALJ found the statements inconsistent with Plaintiff's activities of daily living and references to work activity after the alleged onset date.

Plaintiff contends the ALJ erred by dismissing the nonmedical source statements without providing germane reasons. (Dkt. 15, 23). Defendant maintains the ALJ properly considered the statements and discredited them for the same reasons as Plaintiff's own symptom statements. (Dkt. 22). The Court finds the ALJ did not err in addressing the nonmedical source statements.

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (quoting *Lewis*, 236 F.3d at 511). The 2017 regulations adjusted the requirements for an ALJ's consideration of nonmedical evidence such as lay witness statements. Under the plain language of the regulations, the ALJ must consider lay witness statements: "In evaluating the intensity and persistence" of symptoms, the ALJ "consider[s] all of the available evidence," including that from "medical sources and nonmedical sources about how [a claimant's] symptoms affect [him]." 20 C.F.R. §§ 404.1529(c)(1); 416.929(c)(1); *see also* SSR 16-3p (requiring ALJs to consider other evidence such as other non-medical sources to evaluate symptoms). However, 20 C.F.R. §§ 404.1520c(d); 416.920c(d), specifies that the ALJ is not required to articulate how he

**MEMORANDUM DECISION AND ORDER - 24**

or she considered evidence from nonmedical sources "using the requirements in subparagraphs (a) – (c)," applicable to evaluations of medical opinions. Rather, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he [or she] must give reasons that are germane to each witness." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).[9]

"Where the ALJ gives clear and convincing reasons to reject a claimant's testimony, and where a lay witness' testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also germane reasons to reject the lay witness testimony." *Thomas v. Comm'r, Soc. Sec. Admin.*, 2022 WL 292547, at *7 (D. Ariz. Feb. 1, 2022) (citing *Caleb H. v. Saul*, 2020 WL 7680556, at *8 (E.D. Wash. Nov. 18, 2020)); *see also Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). Such is the case here.

The nonmedical source statements provide observations of Plaintiff's symptoms that parallel Plaintiff's own subjective symptom statements. As discussed above, the ALJ articulated clear and convincing reasons for rejecting Plaintiff's symptom statements. The ALJ relied on the same reasons – inconsistency with the objective medical evidence and activities of daily living and work – as the bases for disregarding the nonmedical source statements. (AR 718-19). The ALJ therefore provided germane reasons for rejecting the

---

[9] This is an open question in the Ninth Circuit. *See Stephens v. Kijakazi*, 2023 WL 6937296, at *2 (9th Cir. Oct. 20, 2023); *Fryer v. Kijakazi*, 2022 WL 17958630, at *3 (9th Cir. Dec. 27, 2022); *Jamie S. v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1954143, at *8 n. 3 (W.D. Wash. May 3, 2024). Courts in this District interpret the revised regulations as not eliminating the ALJ's obligation to consider and address nonmedical sources evidence and to articulate germane reasons for disregarding the same. *Megan Ann D. v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1308928, at *5 (D. Idaho March 27, 2024).

**MEMORANDUM DECISION AND ORDER - 25**

nonmedical source statements. *Valentine*, 574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."). Accordingly, the ALJ's decision will be affirmed.

**ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, IT IS HEREBY ORDERED that the Commissioner's decision finding that the Plaintiff is not disabled within the meaning of the Social Security Act is **AFFIRMED** and the Complaint (Dkt. 1) is **DISMISSED**.

DATED: September 11, 2024

Honorable Debora K. Grasham
United States Magistrate Judge